## Villani v. Erie Insurance Exchange

*Kolb, Holland, Antonelli & Heffner,* for plaintiff.

*Mindlin, Sigmon, Briody & Littner,* for defendant.

WOODRING, J., March 21, 1966.—This case is before us on defendant's preliminary objections to plaintiffs' complaint in assumpsit. Plaintiffs seek to recover for damages allegedly caused by windstorm under a policy of insurance called the Pioneer Home-Protector policy and issued by Erie Insurance Exchange of Erie, Pa.

The preliminary objections are:

"1. The Plaintiffs have sued the wrong party defendant.

"2. The Plaintiffs have failed to specify the date of the loss insured against in the policy, Exhibit A.

"3. The Plaintiffs have failed to specify the damage and loss insured against in the said policy.

"4. The Plaintiffs have failed to specify the performance of conditions required to be performed by the Plaintiffs under the terms of the said policy.

"5. Paragraph 10 of the Complaint is impertinent".

Plaintiffs concede the merit of objection no. 2 and have stated in their brief:

"2. Defendant's second preliminary objection is conceded by the plaintiffs. Plaintiffs will file an amended complaint specifying the date of the loss as having occurred on February 7, 1965".

Likewise, defendant has withdrawn objection no. 4. We will, therefore, limit our attention to objections 1, 3, and 5.

### OBJECTION NO. 1

Plaintiffs have sued Erie Insurance Exchange, the insurer under the policy issued to plaintiffs on October 26, 1962. Defendant contends that under the terms of the policy, the named defendant should be Erie Indemnity Company, attorney-in-fact for subscribers at Erie Insurance Exchange. Defendant relies upon item 6 in section 3 of the policy, at page 13:

"6. Suits Against ERIE. To avoid multipicity of suits, the Insured agrees that all actions or suits at law, or in equity, by him or on his behalf by reason of any claims arising under this policy against ERIE, shall be brought against Erie Indemnity Company, Attorney-in-Fact for Subscribers at Erie Insurance Exchange. The Attorney-in-Fact is hereby authorized to receive and admit service of process on behalf of Subscribers in any suit or other proceedings begun or maintained as aforesaid".

Erie Insurance Exchange is an association of insurance companies which executes reciprocal or inter-insurance contracts between the subscribing companies. This practice has been defined:[1]

"A system of insurance whereby several individuals, partnerships and corporations underwrite each other's risks against loss by fire or other hazard, through an attorney-in-fact, common to all, under an agreement that each underwriter acts separately and severally and not jointly with any other".

Insurance exchange has been recognized by the laws of the Commonwealth since 1913.[2] The presently controlling act[3] provides:

"Individuals, partnerships, and corporations of this Commonwealth, hereby designated subscribers, are hereby authorized to exchange reciprocal or inter-insurance contracts with each other, or with individuals, partnerships, and corporations of other States and countries, providing indemnity among themselves from any loss which may be insured against under any provision of the insurance laws excepting life insurance".[4]

The modus operandi of an exchange is discussed at

---

[1] Long v. Sakleson, 328 Pa. 261, 195 Atl. 416.

[2] Act of June 27, 1913, P. L. 634.

[3] Act of May 17, 1921, P. L. 682, sec. 1001, 40 PS §961.

[4] See also section 1002 of the Act of 1921, which expressly authorizes insurance companies to exchange insurance contracts.

length by the former Chief Justice Kephart in Long v. Sakleson, supra. The opinion in that case also considers the pros and cons of designating the exchange as the real party in interest and, therefore, defendant; or, one of the subscribers, i.e., one of the insurance companies which operates through the exchange. We deem it unnecessary to repeat in this opinion what has been so well expressed by Chief Justice Kephart.

The fact remains that plaintiffs, when they purchased and accepted the policy of insurance under which they now make claim, agreed that if suit had to be instituted, it would be brought against Erie Indemnity Company, attorney-in-fact for subscribers at Erie Insurance Exchange. We know of no reason why that provision is inapplicable and should not be enforced against plaintiffs. Objection no. 1 must, therefore, be sustained.

### OBJECTION NO. 3

Have plaintiffs failed to specify the loss which is insured by the policy? Plaintiffs' allegation of damage is set forth in paragraphs 6 and 7 of the complaint:

"6. On or about the 7th day of February, 1965, and while the said insurance was in full force and effect, the said dwelling houses so insured were damaged by wind.

"7. On or about the 7th day of February, 1965, and while the said insurance was in full force and effect, the said dwelling houses were damaged by wind, to wit: the roof was damaged and after the said roof was damaged, the rain, snow and sleet did enter the interior of said dwelling houses and did damage the interior of said dwelling houses".

The windstorm provision in the policy is found in section 1, item 2, page 1:

"Windstorm and Hail, excluding loss to the interior of the building or the property covered therein caused by water, rain, snow, sand or dust, whether driven by

wind or not, unless the building covered or containing the property covered shall first sustain an actual damage to roof or walls by the direct force of wind or hail".

The windstorm coverage protects against damage to the property by windstorm and, in such event, protects against water, rain, snow, sand and dust damage which results because of the property damage. The windstorm provision contained in the policy expressly excludes any and all of these resultant damages unless the insured property "shall first sustain an actual damage to roof or walls by the direct force of wind". When considered in this light, we must conclude that plaintiffs' paragraphs 6 and 7 allege mere conclusions and lack specificity to which defendant is entitled.

The insured premises constitute a double dwelling. Plaintiffs merely allege that the roof was damaged. Was it on 311 East Fairview Street or on 313 East Fairview Street, or both? Was it at or near the ridge of the roof or at the eaves or somewhere in between? Was the damage restricted to the outer surface, or did it penetrate through the roofers and into the interior? What was the approximate area of the damage, etc.? We fully recognize that under the present rules of civil procedure, plaintiffs need not and should not plead evidentiary facts. On the other hand, the complaint should afford defendant reasonable information concerning the particular issue involved. In the instant case, defendant has a right to know from the contents of the complaint whether the alleged damage resulted from windstorm or from rain and snow only.

## OBJECTION NO. 5

This objection is to paragraph 10 of the complaint, which reads:

"10. The Defendants did assign an adjuster to investigate said wind damage and loss and interior damage to the dwelling houses, and said adjuster did in-

spect, photograph and submit written reports to the Defendant pertaining to the wind damage and damage and loss to the interior of the Plaintiffs' premises herein insured under policy of insurance as set forth in Paragraph 4".

We deem the contents of paragraph 10 to be impertinent. Conceivably, the facts therein stated may become material at the trial. They do not raise any issue, however, to which defendant should be required to answer. Paragraph 10 apparently is included as supportive of the allegations of damage. It tends to raise issues which are collateral to plaintiffs' claim. The issues on that claim will be more sharply defined if paragraph 10 is stricken.

### ORDER OF COURT

And now, March 21, 1966, defendants' preliminary objections 1, 3, and 5 are sustained in accordance with the foregoing opinion, with leave to plaintiffs to file an amended complaint within 20 days.